UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JENNIFER TIFFANY,

                          Plaintiff,

      v.                                         3:04-CV-0677

KDF COMPANY, LLC, INNOVATIVE
HEALTHCARE SOLUTIONS , INC., formerly
known as, DEPOSIT COMPUTER SERVICES, INC.,
and FRANK FIUMERA, as aider and abettor.

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I. INTRODUCTION**

       Plaintiff Jennifer Tiffany commenced the instant action against Defendants alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et. seq. ("NYSHRL"). Defendants request summary judgement pursuant to Fed. R. Civ. P. 56 on the grounds that Plaintiff's claims are untimely, and that no fair-minded trier of fact could reasonably find in her favor under Title VII or the NYSHRL. Plaintiff opposes, arguing that her pregnancy discrimination and retaliation claims were brought within the requisite time period and that her other claims are timely under the continuing violation exception and the equitable tolling doctrine, and that there are genuine issues of triable fact warranting a trial.

**II.      FACTS**

Plaintiff began working with Defendant Deposit Computer Services, Inc. ("DCSI") in 1994. Defendant Frank Fiumera ("Fiumera") was President and CEO of DCSI and the owner of KDF Company, LLC ("KDF"). Plaintiff worked in DCSI's Accounting Department and at KDF as Fiumera's Administrative Assistant. (Compl. ¶ 10). The Complaint alleges that Plaintiff was subjected to the following incidents during her terms of employment:

a. In or about December 1998 or January 1999, Defendant Fiumera ("Fiumera") told her about a dream he had where the two of them had sex together all weekend;

b. In or about February 1999, Fiumera described to her sex acts that he had with his girlfriend and described sex acts between his friend and a female employee;

c. In or about March of 1999, Fiumera told Plaintiff they could use a hot tub together on a business trip;

d. In or about March of 1999, Fiumera told her that he was going to bring Plaintiff a black "teddy" from a business trip in China;

e. In or about April of 1999, Plaintiff informed Fiumera that she was pregnant and Fiumera's response was that Plaintiff "would not want to work". Plaintiff then told Fiumera that she had to work, she needed the job and she needed the health insurance provided by the defendants;

f. After informing Fiumera of her pregnancy, Fiumera made comments to other employees such as "no, I'm not the father";

g. After Plaintiff informed Fiumera of her pregnancy in April 1999, and that his sexually explicit comments, conduct and overtures were unwanted, unwelcome and

offensive, Fiumera became increasingly critical of Plaintiff's work performance and remained so throughout the duration of her employment;

    h. In or about August 1999, Plaintiff complained to co-worker Terry Otis ("Otis") about Fiumera's conduct. Plaintiff alleges that Fiumera was informed of Plaintiff's complaint because he stated in front of Plaintiff that he better "be careful" or "someone" would "charge him" with "sexual harassment";

    I. In or about October 1999, in an effort to escape from the abusive environment created by Fiumera, Plaintiff asked to be transferred to a less-prestigious position with fewer responsibilities and a different title;

    j. In or about November 1999, Plaintiff verbally complained to Ruth Folejewski ("Folejewski"), Defendants' Director of Human Resources, about Fiumera, including his sexual remarks made to Plaintiff and remarks about her pregnancy[1];

    k. In or about November 1999, Plaintiff went on disability leave due to her pregnancy;

    l. In or about early January 2000, while Plaintiff was on pregnancy leave, she was informed by Fiumera that KDF was "closing" and that she no longer had a job with KDF. She was offered a job with Defendant DCSI at a pay rate that was less than what she had been previously earning;

    m. In or about September 2000, Plaintiff learned that KDF had not closed and that it continued to remain in business; and

---

[1] However, Plaintiff states in her deposition that she did not go into specifics when complaining to Folejewski. (Pl.'s Dep. 55)

n. While Plaintiff was pregnant, another female employee was hired for Plaintiff's former job and continued in that position after Plaintiff was discharged in January 2000; (Compl. at ¶ 11).

The Complaint further alleges that Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her gender, because she was pregnant and because she resisted and complained about Fiumera's offensive conduct towards her.

On October 12, 2000, Plaintiff filed a charge of hostile work environment based on sex and pregnancy, retaliation due to complaints of sexual harassment, and pregnancy discrimination with the New York State Division of Human Rights ("NYSDHR") and the EEOC. Plaintiff received a "Right to Sue" letter from the EEOC. On June 14, 2004, Plaintiff commenced the instant litigation. Presently before the Court is Defendants' motion for summary judgement seeking dismissal of all of Plaintiff's claims.

## III.   STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). With this standard in mind, the Court will address Defendants' motion.

## IV. DISCUSSION

Defendants request summary judgement on the grounds that (1) Plaintiff did not timely file her complaint with the EEOC or NYSHRD pursuant to U.S.C. § 2000e-5 (c); (2) Plaintiff cannot state a claim for sexual harassment because her allegations of harassment, even if accepted as true, were not sufficiently severe or pervasive to constitute a hostile work environment; (3) Plaintiff has failed to establish a discrimination claim; (4) Plaintiff has failed to establish a retaliation claim; and (5) Plaintiff cannot state a claim under Title VII against Fiumera because there is no individual liability.

### a.     The Timeliness of Plaintiff's Title VII Claims

Prior to commencing suit alleging violations of Title VII, a Plaintiff must first file a charge of discrimination with the EEOC within the statutory time period. See Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 2070 (2002). Pursuant to 42 U.S.C. § 20003-5(e)(1)

> A charge under this section shall be filed within one hundred and eighty

> days after the alleged unlawful employment practice occurred and notice
> of the charge (including the date, place and circumstances of the alleged
> unlawful employment practice) shall be served upon the person against
> whom such charge is made within ten days thereafter, except that in a
> case of an unlawful employment practice with respect to which the person
> aggrieved has initially instituted proceedings with a State or local agency
> with authority to grant or seek relief from such practice or to institute
> criminal proceedings with respect thereto upon receiving notice thereof,
> such charge shall be filed by or on behalf of the person aggrieved within
> three hundred days after the alleged unlawful employment practice occurred.

Therefore, the time within which a charge of discrimination must be filed with the EEOC varies depending on whether a charge has initially been filed with an appropriate state agency. Quinn v. Green Tree Credit Corp., 159 F. 3d 759, 765 (2d Cir. 1998). If a charge is filed with a proper state agency, it must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); See Morgan, 122 S. Ct. 2070. In all other circumstances, the charge must be filed within one hundred and eighty days after the alleged unlawful employment practice. Id. "A claim is time barred if it is not filed within these time limits." Morgan, 122 S. Ct. at 2070.

The NYSDHR is an agency with authority to grant or seek relief from unlawful employment practices. See N.Y. Exec. Law §§ 290(3), 295; Bd. of Higher Educ. of City of New York v. Carter, 14 N.Y.2d 139 (1964). Individuals who first file charges of discrimination with the NYSDHR may avail themselves of the longer three hundred day period within which they must file a charge of discrimination with the EEOC. Ford v. Fineson, 81 F.3d 304 (2d Cir. 1996). ("[B]efore the 180-day period is extended to 300 days the person bringing the charge must initially institute proceedings with the state agency.") (internal quotations and alterations omitted). Here, Plaintiff filed with both the NYSDHR and the EEOC on October

13, 2000. (Compl. ¶ 9; Pl.'s Mem. Opp. Summ. J. 1.) Accordingly, unless an exception applies, any conduct prior to December 17, 1999 is time- barred.² Ford, 81 F.3d at 313 n.6.

The next issue, therefore, is whether Plaintiff's claims constitute discrete discriminatory acts. See generally Morgan, 122 S. Ct. 2061. This is because the continuing violation theory does not apply to discrete acts of unlawful employment practices. Id. at 2071. The Morgan Court stated:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing chargers alleging that act. The charge, therefore, must be filed within the 180-or 300-day time period after the discrete discriminatory act occurred.

Id., 122 S. Ct. at 2072.

In the instant case, Plaintiff alleges that she was terminated in January 2000 on account of her pregnancy and in retaliation for protected activity and that she was subjected to a hostile work environment. The pregnancy discrimination and retaliation claims are discrete acts that fall within the 300 day period and, therefore, are timely. Absent some exception, all other allegations of discrete acts of discrimination occurring prior to December 17, 1999 are time-barred.

### b.       Continuing Violation Theory

Plaintiff claims that Defendants created and/or permitted a hostile work environment. Unless Plaintiff can avail herself of the continuing violation theory, as discussed above, all incidents of sexual harassment occurring prior to December 17, 1999 are time-barred. Under Title VII's continuing violation doctrine, "if a plaintiff has experienced

---

² December 17, 1999 is three hundred days before October 13, 2000, the date on which plaintiff filed her charges of discrimination and retaliation.

a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)(internal quotation marks and citations omitted). "The continuing violation doctrine allows all claims resulting from a discriminatory policy or practice to be considered timely, even if untimely standing alone." Plumey v. New York State, 2005 WL 1412962, at * 5 (June 15, 2005)(citing Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)).

Conduct that has been characterized as a continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 111 (internal quotation marks omitted); Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir. 2003). To assert a continuing violation, Plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998). The theory is generally disfavored in the Second Circuit Court of Appeals. Smering v. PMC Corporation, 2004 U.S. Dist. LEXIS 19924 (W.D.N.Y. 2004). "Indeed, only 'compelling circumstances will warrant application of the exception to the statute of limitations.'" See Quadrozzi Concrete Corp. v. City of New York, 2004 U.S. Dist. LEXIS 19880, *25 (S.D.N.Y.2004)(quoting McMillian v. City of New York, 1997 U.S. Dist. LEXIS 14312 (S.D.N.Y. Sept. 19, 1997), aff'd, 1998 U.S.App. LEXIS 12949 (2d Cir. May 29, 1998)).

Here, based on the evidence in the record, the Court is unable to identify any conduct occurring after December 17, 1999 that is sufficiently related to any pre-December 17, 1999 conduction such that it can be said to be part of an ongoing policy or practice of

discrimination. The only post-December 17, 1999 conduct in the record consists of Plaintiff's termination. There is insufficient evidence upon which it can reasonably be concluded that the termination was related to Fiumera's sexual and/or pregnancy-related comments that were made many months earlier. Unlike in Fitzgerald, Plaintiff's allegations of workplace harassment do not present a "constant stream" of "almost daily abuse" with "no interruption" that continued from Fiumera's conduct into the limitations period. See Fitzgerald, 251 F.3d at 363.[3] Thus, the Court finds that the continuing violation theory does not apply and that it may only consider the alleged discriminatory acts occurring after December 17, 1999. That being said, the sole instance of termination occurring in January 2000 does not rise to the level of a hostile work environment.

### c. Equitable Tolling

Plaintiff requests application of the equitable tolling doctrine to her untimely claims. The time period for filing a charge of employment discrimination is subject to equitable doctrines such as tolling or estoppel. Nat'l R.R., 536 U.S. at 113. Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. Bowers v. Transportacion Maritma Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990). Equitable tolling is only appropriate in "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000), where a party is "prevented in some extraordinary way from exercising [her] rights," Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and alteration omitted). Equitable tolling may be applied where a plaintiff actively pursued judicial remedies but filed a defective

---

[3] See n.4 *infra*.

pleading during the specified time period; where a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented him or her to file in a timely fashion. Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 79 (2d Cir. 2000).

In determining whether equitable tolling is applicable, the court must consider whether Plaintiff (1) acted with reasonable diligence during the time period she seeks to have tolled; and (2) has proved that circumstances are so extraordinary that the doctrine should apply. Id. "An "extraordinary" circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." Miller v. IT&T, 755 F.2d 20 (2d Cir. 1985).

In the instant case, Plaintiff must show extraordinary circumstances which prevented her from filing a claim before October 13, 2000. Plaintiff claims that equitable tolling applies due to the alleged misleading statement made to her regarding the "closing of KDF". (See Compl.) Plaintiff asserts that she was unaware of the true status of KDF until September 2000. While Plaintiff asserts she filed her claim as soon as possible after learning about the status of KDF in September 2000, there is no evidence supporting a claim of extraordinary circumstances that prevented her from learning of the status of KDF or from filing a claim earlier than she did. It is undisputed that Fiumera told Plaintiff at the January 5, 2000 meeting that "KDF was closing". However, while made by the owner of the company, this single comment did not in any way prevent Plaintiff from learning what she believes to have been the true status of KDF before September 2000. The evidence does not suggest that Plaintiff was somehow prevented in an extraordinary way from speaking with former co-

workers or from visiting KDF before September 2000 or from otherwise ascertaining that it remained a going concern. The record suggests that KDF was in the process of closing down and that laying off employees was part of the company's dissolving process. (Fiumera Aff. ¶ ¶ 22-24; Folejewski Aff. ¶ ¶ 13-14.). The record further demonstrates that approximately 20 other employees were discharged around the same time as Plaintiff. The record does not suggest that Fiumera's comment about KDF "closing" was a fraudulent statement or that it was misleading to a degree that prevented Plaintiff from exercising her rights. Had she exercised due diligence, Plaintiff could have learned what she believes to be the true status of KDF before September 2000. Therefore, because Plaintiff did not act with reasonable diligence, equitable tolling is not applicable in this case.

### d.     Hostile Work Environment

Assuming that the continuing violation theory applies here and that Plaintiff's claims are timely, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, no fair-minded trier of fact could reasonably conclude that she was subjected to a hostile work environment. To be actionable under a hostile work environment claim, Defendants' conduct must be "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). In considering whether conduct is "sufficiently severe and pervasive" the courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), Quinn, 159 F.3d at 767. The concept of sexual harassment "is not designed to

purge the workplace of vulgarity." Baskerville v. Cullgian International Co., 50 F.3d 428,431 (7th Cir. 1995). Title VII does not cover the "sporadic use of abusive language, gender-related jokes and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The Court agrees that "[d]rawing a line is not always easy. On one side lies sexual assault, other physical contact; obscene language or gestures. . . . On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse and boorish workers." Baskerville, 50 F.3d 428.

In the instant matter, the Court finds Plaintiff was in a situation of occasional comments of a distasteful nature, laden with sexual innuendo. Plaintiff did not recall any instances of alleged sexual harassment between Fall 1998 and October 1999. (Pl.'s Dep. 50). Although there is evidence of offensive and inappropriate incidents in December 1998 or January 1999 through approximately April 1999, they are few in number, relatively infrequent, and not terribly severe. While the comments made, if taken as true, are inappropriate and may cause discomfort, their infrequent nature suggests they did not pervade Plaintiff's work environment and unreasonably interfere with her ability to perform her job. Quinn, 159 F.3d 759. Furthermore, all of the alleged incidents put together do not rise to a level of sufficient severity to alter the conditions of Plaintiff's employment. Id. A comment about the paternity of Plaintiff's unborn child, disclosure of a sexual dream involving Plaintiff, comments about the sexual actions between co-workers, and a comment about a gift of lingerie do not create the severe type of work environment against which the hostile work environment claim was created to protect. There is insufficient evidence of any alleged harassing conduct after April 1999. Plaintiff did not recall any instances of

harassment while working under Folejewski. (Pl.'s Dep. 50).  Even if the Court were to infer that some such conduct occurred, there is insufficient evidence regarding its pervasiveness or severity to enable the conclusion that it rose to the level of a hostile work environment.[4]  In short, the alleged acts are few in number, isolated, and insufficiently severe such that a fair-minded trier of fact could not reasonably conclude that they pervaded Plaintiff's work environment. (Pl.'s Compl.)  Plaintiff has, therefore, failed to establish a claim of hostile work environment against the Defendants.

### e. Pregnancy Discrimination

Plaintiff asserts that Defendants discriminated against her on the basis of her pregnancy.  According to the three step McDonnell-Douglas burden-shifting analysis, Plaintiff must first establish a prima facie case of discrimination. Once Plaintiff succeeds in proving the prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised, and the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for the employee's termination. Once Defendants have carried their burden, any inference of discrimination disappears and Plaintiff must demonstrate that discrimination was a motiving factor in her termination.  Plaintiff may do this by demonstrating that the legitimate reasons offered by Defendants were not their true reasons, but were a pretext for discrimination, or otherwise provide evidence suggesting that

---

[4] In her opposition papers, Plaintiff contends that she was subjected to daily abusive conduct by Fiumera.  However, this contradicts her deposition testimony wherein she was only able to identify the above-described incidents of harassment and did not claim to have been subjected to daily abuse. (Pl.'s Mem. Opp. Summ. J. 11; Pl.'s Dep. 21, 23, 28, 31, 33, 41, 42, 46, 50)  Of course, one cannot contradict her deposition through an affidavit to create a triable issue of material fact and defeat summary judgment.  Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

her pregnancy was a motivating factor in her termination. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a prima facie case of discrimination, Plaintiff must establish that: (1) she is a member of a protected class; (2) she is competent to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based upon her membership in the protected class. Id.

Here, Plaintiff is a member of a protected class as she was pregnant and on pregnancy disability leave at the time of her termination on January 5, 2000. 42 U.S.C.A. § 2000(e)(k). Based on the evaluations submitted into evidence, a fair-minded trier of fact could reasonably conclude that Plaintiff was competent and performing her job and duties at a satisfactory level. (Exhibits C,D,E). This is substantiated by the fact that Defendants did not purport to terminate Plaintiff on account of her work performance. When determining what constitutes an "adverse employment decision or action" the courts have considered termination of employment, demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits and significantly diminished material responsibilities as actions sufficient to qualify as evidence under a prima facie case. Williams v. R.H. Donnelley Corp., 368 F.3d 123, 128 (2d. Cir. 2004) (citation omitted). It is undisputed that Plaintiff was terminated from her job on January 5, 2000 while on pregnancy leave and offered a lesser-paying position at another company. The termination and offer of a lower paying position are sufficient evidence of an adverse employment action. Thus, Plaintiff has satisfied the first three elements of her prima facie case. That leaves the issue of causation.

The Second Circuit has not drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a constitutional right and an allegedly retaliatory act." Gorman-Bakos, 252 F.3d 545, 554 (2d Cir. 2001). The Second Circuit has considered temporal proximity ranging from twelve days to eight months as evidence of a casual link between a protected act and adverse employment action. Id.  Here, the Court finds that relatively close temporal proximity of the approximately two months between Plaintiff's pregnancy leave and her termination is sufficient to raise an inference of discrimination. Thus, Plaintiff has established a prima facie case of discrimination.  The burden, therefore, shifts to Defendants to assert a legitimate, non-discriminatory reason for discharging the pregnant employee. 42 U.S.C.A.  §2000(e)(k), N.Y. McKinney's Executive Law  §290.

Defendants claim that Plaintiff was one of about twenty or so lay-offs occurring within the same time period as a result of KDF dissolving as a business.  Defendants further assert that the employee layoffs began in early 1999, months before Plaintiff had announced she had become pregnant. (Def.'s Mem. Supp. Summ. J. 19; Fiumera Aff. ¶ ¶ 22-24; Folejewski Aff. ¶ ¶  13-14).  Economic or business reasons are legitimate and non-discriminatory justifications for terminating a Plaintiff's employment. Abdu-Brission v. Delta Airlines, Inc., 239 F.3d 456 (2d Cir. 2001).  Thus, the burden reverts to Plaintiff to demonstrate that she was discriminated against on account of her pregnancy.

As noted, Courts have found "a showing of temporal proximity between a protected activity and an adverse employment action to merit the inference of a causal connection sufficient to defeat an employer's motion for summary judgment". Bennett v. Progressive Corp., 225 F. Supp.2d 190 (N.D.N.Y. 2002) (citing Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,

263 F.3d 208, 224 (2d Cir. 2001)). Here, the period of two months is relatively short. Furthermore, there is some evidence that KDF did not dissolve in January 2000. Therefore, although the connection is tenuous, looking at the evidence in the light most favorable to Plaintiff, there remains sufficient evidence upon which a rational trier of fact could reasonably conclude that her pregnancy may have been a factor in her termination. Defendants, therefore, are not entitled to a summary judgement on this claim.

### e.  Retaliation

Plaintiff alleges that Defendants retaliated against her for complaining to Folejewski about Fiumera's alleged offensive behavior and comments towards Plaintiff. (Pl.'s Mem. Opp. Summ. J. 19.)  A claim of retaliatory discharge requires Plaintiff to establish that: (1) she engaged in a "protected activity" that was known to the employer; (2) she suffered an "adverse employment action" and (3) there was a "causal connection" between the protected activity and the adverse employment action. Feingold v. State of New York, 366 F.3d 138 (2d Cir. 2004).

Here, Plaintiff alleges that she engaged in a protected activity when she complained about Fiumera's conduct to Otis in August 1999 and to Folejewski in November 1999. Plaintiff claims that she had a good faith reasonable belief that she was opposing a hostile work environment created by Fiumera. (Pl.'s Mem. Opp. Summ. J. 19). Plaintiff alleges that the "protected activity" was known to Fiumera because, after complaining to Otis, Fiumera made a comment in front of Plaintiff that he "better be careful" because "someone" would "charge him" with "sexual harassment."(Pl.'s Aff. ¶ 23).  Thus, Plaintiff has satisfied the first element. Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001).

The adverse employment action that Plaintiff alleges occurred in relation to the retaliatory claim is the termination and offer of a lesser paying job that occurred on January 5, 2000. This satisfies the second element. Williams, 368 F.3d 123, 128.

In determining whether a causal connection can be made between the "protected act" and the adverse employment action, the Court may consider the time frame between the two activities. Cifra v. General Electric Co., 252 F.3d 205 (2d Cir. 2001). Plaintiff alleges that she made an oral complaint to Folejewski in November 1999 about Fiumera's harassing conduct towards her just before her maternity leave. (Pl.'s Mem. Opp. Summ. J. 20.) Based on the short time frame, approximately 2 months, between Plaintiff's complaint to Folejewski and her termination, a reasonable trier of fact could infer a retaliatory motive. Gorman-Bakos, 252 F.3d 545, 554 (2d Cir. 2001).

Once Plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged retaliatory act. Holtz v. Rockefeller and Co., Inc., 258 F.3d 62, 81 C.A.2 (N.Y.) 2001. As discussed, Defendants claim of layoffs satisfies this burden.

Again, however, although the claim is weak, the Court finds that the brief period of time between the complaint and the termination, together with the fact that KDF did not dissolve in January 2000 could support an inference of causation.

### f.   Individual Liability under Title VII

Defendants correctly state that Title VII does not impose individual liability against supervisors who have engaged in discrimination. Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir.1995). However, a supervisor is an "employer" for purposes of establishing liability under the New York State Human Rights Law (NYSHRL) if that supervisor actually

participates in the conduct giving rise to the discrimination. *(*N.Y. Exec. Law §§ 296 et. seq.). Fiumera was Plaintiff's supervisor and is alleged to have discriminated against Plaintiff. Accordingly, he may be held liable under the NYSHRL.

## II.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  All discrete acts of discrimination occurring prior to December 17, 1999 are time-barred.  Plaintiff's hostile work environment claim is DISMISSED.

    IT IS SO ORDERED

Dated: October 24, 2005

_____
Thomas J. McAvoy
Senior, U.S. District Judge